UNITED STATES of America, Appellee,

v.

Victor DEL TORO SOTO, Defendant-Appellant.

UNITED STATES of America, Appellee,

v.

Francisco Rivera GONZALEZ, Defendant-Appellant.

Nos. 81–1184, 81–1169.

United States Court of Appeals, First Circuit.

Argued Feb. 1, 1982.

Decided April 23, 1982.

Carlos Lopez De Azua, Hato Rey, P. R., by appointment of the Court, for defendant-appellant Francisco Rivera-Gonzalez.

Marshall D. Stein, Boston, Mass., by appointment of the Court, with whom Hale, Sanderson, Byrnes & Morton, Boston, Mass., was on brief, for defendant-appellant Victor del Toro Soto.

H. Manuel Hernandez, Asst. U. S. Atty., Hato Rey, P. R., with whom Raymond L. Acosta, U. S. Atty., Hato Rey, P. R., was on brief, for appellee.

Before COFFIN, Chief Judge, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

These are appeals by Victor del Toro Soto and Francisco Rivera Gonzalez from jury convictions of aiding and abetting each other in tearing, cutting, and injuring two United States mail pouches and stealing mail matter and money from a postal employee by the use of force and violence in violation of 18 U.S.C. §§ 2, 1706 and 2114.

We discuss the issues seriatim in descending order of importance starting with those raised by appellant del Toro Soto.

*The Jencks Act Issue*

Postal Inspector Jose Daniel Cardona was the government agent in charge of the case. He testified in detail about his investigation, including interviews he had conducted with two indicted codefendants, Victor Garcia Ramos and Jose Maldonado Vega, who were government witnesses at the trial. During cross-examination, Cardona testified that he made a "presentation letter" to the United States Attorney's office of the entire investigation, including what he had done personally. The "presentation letter" was based on reports and notes he had made during the investigation. Defense counsel requested an opportunity to examine the investigation report. The court ruled without any examination of the report and inquiry that it "is not 3500 material." A short time later defense counsel requested that the court reconsider its ruling. Although his position was not explained very clearly, defense counsel urged that the report of the agent-witness came within the definition of producible material under 18 U.S.C. § 3500. The motion for reconsideration was denied, again without any inquiry into or examination of the material sought.

We begin our analysis with the pertinent words of the statute:

After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. § 3500(b).

The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him[.]

28 U.S.C. § 3500(e)(1).

There can be little doubt that Cardona's investigation report is a statement within the plain meaning of the words of the statute. And the case law reinforces that conclusion. *Clancy v. United States*, 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574 (1961), held that a memorandum by a government agent-witness prepared after an interview with a witness without the benefit of interview notes, came within the statute and should have been produced. In *Goldberg v. United States*, 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976), the Court held that

a writing prepared by a Government lawyer relating to the subject matter of the testimony of a Government witness that has been "signed or otherwise adopted or approved" by the Government witness is producible under the Jencks Act, and is not rendered nonproducible because a Government lawyer interviews the witness and writes the "statement."

*Id.* at 98, 96 S.Ct. at 1342.

■ In *United States v. Cleveland*, 477 F.2d 310 (7th Cir. 1973), a case on all fours with this, Judge (now Associate Justice) Stevens ruled that the term "statement" in subsection (e)(1) of the Act "includes the report of a government agent who testified as a prosecution witness." *Id.* at 316. With one exception, the cases relied on by the government have to do with the producibility of reports, *see infra*, not whether they constitute a statement under the statute. *United States v. Nickell*, 552 F.2d 684, 687–88 (6th Cir. 1977), *cert. denied*, 436 U.S. 904, 98 S.Ct. 2233, 56 L.Ed.2d 402, *reh'g denied*, 438 U.S. 908, 98 S.Ct. 3128, 57 L.Ed.2d 1150 (1978), held, with one judge dissenting, that "all of the reports" of an FBI agent-witness were not Jencks Act statements and need not be examined by the district court in camera because it was undisputed that the witness statements taken by the agent had been made available to defense counsel. In *United States v. Dark*, 597 F.2d 1097 (6th Cir.), *cert. denied*, 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 183 (1979), the court held, citing to and quoting from *Nickell*, that the contents of the case file of an IRS special agent who testified were not Jencks Act statements and did not require an in camera inspection by the district court because there was no basis for belief that a Jencks Act statement existed other than those already furnished defense counsel. *Id.* at 1099. We do not think these cases are applicable. As we read the Sixth Circuit cases, they involved an attempt by defense counsel to examine material that they hoped might contain Jencks Act statements of any government witness. That is not our situation. Here, the witness had testified at length about the investigation he conducted of the robbery. He had already

submitted a report covering in part, at least, the subject matter of his testimony. If there was a conflict between the report and his testimony, it was impeachment ammunition for the defense. We think Justice Stevens' concurrence in *Goldberg* is instructive. He points out that "[t]he statutory definition of the term 'statement' was intended by Congress to describe material that could be fairly used to impeach the testimony of a witness." 425 U.S. at 112, 96 S.Ct. at 1349. We hold that the district court erred in ruling that the investigation report was not section 3500 material.

■ But determining that the report was a statement under the Act is only the first step. As was pointed out in *United States v. Cleveland*, 477 F.2d at 315–16, there are two problems: first, is the report a statement within the meaning of the statute, and second, is it producible. In determining whether the report is producible, "the key question is whether the information contained in the statements 'relate[s] generally to the events and activities testified to' by the witness." *United States v. Ferreira*, 625 F.2d 1030, 1034 (1st Cir. 1980), quoting *United States v. O'Brien*, 444 F.2d 1082, 1086 (7th Cir. 1971). This determination must be made in the first instance by the district court. *Goldberg v. United States*, 425 U.S. at 108–09, 96 S.Ct. at 1347. This will usually require a careful examination of the material sought. The trial judge has the affirmative duty

> to administer the statute in such way as can best secure relevant and available evidence necessary to decide between the directly opposed interests protected by the statute—the interest of the Government in safeguarding government papers from disclosure, and the interest of the accused in having the Government produce "statements" which the statute requires to be produced.

*Campbell v. United States*, 365 U.S. 85, 95, 81 S.Ct. 421, 427, 5 L.Ed.2d 428 (1961). In *United States v. Strahl*, 590 F.2d 10, 14–15 (1st Cir. 1978), *cert. denied*, 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979), we em-

phasized the vital role of the district judge in conducting a searching Jencks Act inquiry. Here, there was no inquiry at all. In *Palermo v. United States*, 360 U.S. 343, 354, 79 S.Ct. 1217, 1225, 3 L.Ed.2d 1287 (1959), the Court noted: "[W]hen it is doubtful whether the production of a particular statement is compelled by the statute, we approve the practice of having the Government submit the statement to the trial judge for an *in camera* determination. Indeed, any other procedure would be destructive of the statutory purpose."

Under the circumstances here, we have no alternative except to remand to the district court for a determination of whether Cardona's report related to the events and activities testified to by him on the witness stand. *Goldberg v. United States*, 425 U.S. at 108–09, 96 S.Ct. at 1347; *United States v. Peters*, 625 F.2d 366, 372 (10th Cir. 1980); *United States v. Conroy*, 589 F.2d 1258, 1273 (5th Cir.), *cert. denied*, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979); *United States v. Cleveland*, 477 F.2d at 316.[1]

Although defendant Rivera Gonzalez did not expressly join in the request for production of the report, it is obvious that the district court's ruling affected both cases and this issue must be considered common to both. The procedure to be followed on remand is well settled. The district court must examine the report in camera and, after a complete inquiry, supplement the record with express findings. If it is then determined to reaffirm the denial of the motion to produce, new final judgments of conviction should be entered in each case. If appellate review is sought, the report should be placed in a sealed envelope for transmission to this court. If, on the other hand, the report is determined to be producible, there must be a new trial in both cases unless the error is deemed harmless. *Goldberg v. United States*, 425 U.S. at 111–12 & n.9, 96 S.Ct. at 1348 & n.9 (emphasizing that "the harmless-error doctrine must be strictly applied in Jencks Act cases");

*United States v. Peters*, 625 F.2d at 371; *United States v. Cleveland*, 477 F.2d at 316 & n.9.

*The Jury Instructions on Reasonable Doubt*

There were two misstatements in an otherwise comprehensive and correct charge:

Proof beyond a reasonable doubt is *such as you would be willing to rely and act upon* in the most important of your own affairs;

A reasonable doubt exists in any case when, after careful and impartial consideration of all the evidence in the case, the jurors do not feel convinced *to a moral certainty*, that a defendant is guilty of the charge.

We, along with other circuit courts, have strongly suggested that the district court should follow the teaching of *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150 (1954), and use the phrase "hesitate to act" rather than "willing to rely and act upon." *United States v. Drake*, 673 F.2d 15 at 20 (1st Cir. 1982). We have been even more emphatic in our condemnation of the "moral certainty" language. *Drake*, at 21.

■ We can only hope that in time our message will be received and followed. Where, however, as here there was no objection to the charge and, read as a whole, it instructed the jury properly on the presumption of innocence and stated that "a reasonable doubt is a fair doubt, based upon reason and common sense, and arising from the state of the evidence," we will not reverse.

At the conclusion of the instruction on reasonable doubt, the court said: "So, if the jury views the evidence in the case as reasonably permitting either of two conclusions, one of innocence, the other of guilt, the jury should of course adopt the conclusion of innocence." Defendant argues that this "carries the clear inference that if the evidence tilts ever so slightly in favor of guilt, a jury can convict." Brief at 14.

1. In *United States v. Strahl*, 590 F.2d 10 (1st Cir. 1978), *cert. denied*, 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979), we did not remand. The issue there, however, was whether the witness had signed or approved the inter-view notes made by the government attorney. We held that, although the judicial inquiry was only minimally adequate, the cross-examination of the witness established that he had not adopted or approved the notes.

There is no basis whatsoever for this argument. It distorts the language so radically as to rupture it.

*The Ruling on the Admissibility of del Toro's 1971 Convictions*

In order to decide whether to have his client testify, del Toro Soto's counsel asked the court to rule whether 1965 and 1971 convictions would be admitted against him.[2] After a bench conference during which the convictions were discussed, the court ruled that it would not admit the 1965 conviction, but that defendant's convictions in 1971 for possession of controlled substances and grand larceny could be introduced if he testified on his own behalf. The court gave as its reason for this ruling "that this defendant is no newcomer to the problems with the law. . . . I think it goes into the state of mind of why he went to get the two individuals and introduce them to the one that planned the robbery and later on join the robbery as an aider and abettor . . . ." Defendant argued below as he does here that the admission of the convictions did not have any probative value and would be extremely prejudicial. Federal Rule of Evidence 609(a)(1)[3] requires that the trial court determine "that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant." It is true, as defendant argues, that under the facts of this case intent and state of mind were not at issue. But we think that the court was thinking in terms of credibility when it ruled that the conversations would be admitted if the defendant testified. Prior to the statements already quoted, the court said, "I will not order the Government not to use them [1971 convictions] to impeach." The grand larceny conviction could certainly have been introduced under Federal Rule of Evidence 609(a)(2) on the general question of the defendant's credibility. *See United States v. Kiendra*, 663 F.2d 349, 353–55 (1st Cir. 1981); *United States v. Brown*, 603 F.2d 1022, 1027–28 (1st Cir. 1979). Another factor to be considered is that the court was ruling without the benefit of defendant's testimony or even an offer of proof as to the general contents of his testimony. Nevertheless, whether or not to make an advance ruling is entirely within the discretion of the trial court. *United States v. Hickey*, 596 F.2d 1082, 1087 (1st Cir.), *cert. denied*, 444 U.S. 853, 100 S.Ct. 107, 62 L.Ed.2d 70 (1979). In any event, if there was error, it was harmless.

We now turn to the issues raised by Rivera Gonzalez.

*The Curtailment of Cross-Examination of a Government Witness*

One of the principal government witnesses was an indicted codefendant, Victor Garcia Ramos. On direct examination he testified that the terms of the signed plea bargain agreement with the government were that in return for his cooperation, three of the four counts against him would be dropped and he could plead guilty to one count carrying a penalty of not more than five years. The written plea bargain agreement was marked as an exhibit. Counts I, II, and IV were dismissed and the defendant pleaded guilty to Count III. On cross-examination, defense counsel attempted to show that Count II, which had been dismissed, carried a maximum penalty of twenty-five years. After objection by the prosecutor, the court ruled at a bench conference that the jury was not to be informed that the maximum statutory penalty on Count II was twenty-five years. In making the ruling, the court stated:

> THE COURT: I am going to allow you only to ask him if he knows that the

---

2. The government does not contest the right of del Toro Soto to raise this issue even though he did not testify. *See United States v. Hickey*, 596 F.2d 1082, 1086–87 (1st Cir.), *cert. denied*, 444 U.S. 853, 100 S.Ct. 107, 62 L.Ed.2d 70 (1979).

3. Fed.R.Evid. 609(a) provides:

> (a) *General Rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

punishment is. If he knows what the punishment is for count 2. If he knows if it is higher than the punishment for the count which he pleaded guilty. That is all I am going to allow you to ask him, because it is not the jury's concern what the punishment is in the statute that is being charged.

MR. LOPEZ: Your Honor, we believe it is the jury's concern.

THE COURT: I am going to allow you to ask the witness if he knows what the punishment on count 2 is, so that you can later on argue to the jury that he bargained for a count in the indictment that carries a maximum of five years when there were other counts that carried a higher penalty.

MR. LOPEZ: But we are never going to tell the jury how much difference it is?

THE COURT: I am not going to allow you to tell the jury.

After the ruling, the following cross-examination took place:

BY MR. LOPEZ:

Q Do you know that count 2 of the indictment that charged you with robbery, carries a much higher penalty than the case that you pled guilty to?

A No, sir.

Q You discussed this plea bargaining with your lawyer, didn't you?

A Yes, sir.

Q And you did not know during the course of your discussion with your lawyer what penalties were imposed in each charge?

A No, sir.

A little later, the witness stated, "As far as I understand it, if I were found guilty in the four counts, I would have to be admitted to imprisonment for 25 years."

■ As the record clearly shows, there was no curtailment of cross-examination. It was the witness' understanding of the plea bargain, not the statutory penalty on the dismissed counts, that bore on his credibility.

In order to understand the other issues raised by Francisco Rivera Gonzalez some factual recitation is necessary. The car that was used in the robbery, a white Malibu, was registered to Fernando Rivera Gonzalez, brother of Francisco. Francisco drove it during the robbery. After the postal inspectors located the car, they ran a license plate check on it and found that it was registered to Fernando Rivera Gonzalez. A picture of Fernando was obtained and inserted in a spread of three or four that was shown to Maldonado, who had already been arrested for participation in the robbery. Maldonado mistakenly identified the picture as that of the driver of the car. Photos of both Francisco and Fernando are part of the record and there is no doubt that the brothers bear a strong facial resemblance to each other. On the basis of Maldonado's identification and the car registration, Fernando was arrested. Del Toro was arrested a short time later and when he saw Fernando, he told the postal inspectors they had the wrong person. One of the inspectors then obtained a photograph of Francisco from the mother of the brothers. This was shown to Maldonado who identified it as a picture of the man who drove the getaway car. The case against Fernando was dismissed and he was released from custody. Francisco was arrested. After being advised of his rights and signing a waiver, he confessed to his role in the robbery but refused to incriminate anyone else or sign a written statement.

■ From this case of mistaken identity, appellant has fashioned three issues, none of which has any merit. The first claim is that he "should have been provided prior to trial with all of the evidence regarding the identification procedure as it was clearly exculpatory." The short answer is that it was all produced prior to trial at the suppression hearing and it was not exculpatory. The postal inspectors made an understandable mistake in arresting appellant's brother, but all witnesses were sure that appellant drove the getaway car.

■ The second issue asserted is that defendant's confession should have been suppressed because there was no probable cause for his arrest. Here the affidavit was based on recent personal observations of an admitted participant in the very crime at

issue. Under these circumstances, the magistrate could justifiably conclude that the informant was reliable and his information credible, and that therefore there was probable cause for arrest. *See, e.g., United States v. Dunloy,* 584 F.2d 6, 10 (2d Cir. 1978); *United States v. Principe,* 499 F.2d 1135, 1137 (1st Cir. 1974).

Finally, the appellant argues that the failure of the government to furnish him a transcript of the hearing on the motion to suppress as ordered by the court deprived him of the right to proper cross-examination. While we do not understand why the prosecutor did not do as the court directed, that is not the issue. Our reading of the cross-examination by defense counsel convinces us that it was as thorough and effective as it could be, given the facts of the case. It was certainly lengthy enough. Defense counsel were present at the suppression hearing which was held on December 22, 1980; the trial started two weeks later—January 7, 1981. The cross-examination makes evident that the information obtained at the hearing was used at the trial.

*Reversed in part, affirmed in part, remanded for further proceedings consistent herewith.*