UNITED STATES of America, Appellee,

v.

George MUNSON, Defendant, Appellant.

No. 86–1805.

United States Court of Appeals,
First Circuit.

Argued April 7, 1987.

Decided May 21, 1987.

John F. Cicilline, argued, Providence, R.I., for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., Portland, Me., with whom Richard S. Cohen, U.S. Atty., and Timothy C. Woodcock, Asst. U.S. Atty., Bangor, Me., were on brief, for appellee.

Before COFFIN, BOWNES and SELYA, Circuit Judges.

BOWNES, Circuit Judge.

Defendant George Munson appeals from a criminal conviction for various offenses involving cocaine distribution. He assigns several errors on appeal regarding the evidence admitted at trial and the court's instructions to the jury. We find no reversible error and, therefore, affirm the conviction.

## I. BACKGROUND

Munson was indicted on six counts by a grand jury in March 1986. Counts I through IV charged him with violating 21 U.S.C. § 841(a)(1) (1982) by distributing cocaine. Munson, who was a resident of Cape Cod, Massachusetts, was charged with traveling to Maine in May 1983 and while there trading three and one-half ounces of cocaine for an automobile. According to the indictment, Munson went to Maine again in July 1983 and distributed cocaine twice on or about July 6 and once on or about July 8. Count V charged Munson with violating 21 U.S.C. 841(a)(1) and 21 U.S.C. § 846 by conspiring to possess, with an intent to distribute, cocaine on November 18–20, 1984. He allegedly provided Norman Grenier and Susan Pierce, who flew to Cape Cod on November 20, 1984, with cocaine, which they transported by chartered airplane to Waterville, Maine. Count VI charged Munson with violating 21 U.S.C. § 843(b) by using a telephone to facilitate the distribution of cocaine.

The principal source of information for the government's case was William Christiansen, a resident of Belfast, Maine, and an admitted drug trafficker, who cooperated in the government's investigation of Munson and testified against him at trial. Eight of Christiansen's associates also testified for the government, including one of the coconspirators mentioned in the indictment, Susan Pierce. After a five-day trial, the jury deliberated for less than one hour and returned a verdict of guilty on all counts.

## II. EVIDENTIARY ISSUES

Munson makes a number of arguments regarding the testimony given by the government's witnesses. He claims that the trial court's rulings deprived him of a fair trial.

### A. Coconspirator Denials

Munson's first argument concerns testimony by Drug Enforcement Administration Special Agent Michael Cunniff about statements Grenier and Pierce made when they were confronted by Cunniff upon arrival in Waterville on November 20, 1984, after they allegedly had obtained cocaine from Munson. Cunniff asked Grenier and Pierce where they had been earlier in the day and inquired about the ownership of the suitcase in their possession. Subsequent testimony demonstrated that Grenier and Pierce gave false and conflicting answers.

At trial Munson's counsel objected on the basis that this testimony by Cunniff was inadmissible hearsay. The district court overruled the objection, but instructed the jury to "bear in mind that what this witness testified to as having been said to him by other persons is not offered for the truth of the matter that that other person

asserted." " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). These statements were admitted to show, through subsequent testimony, that Grenier and Pierce were lying about their activities. They were not offered "to prove the truth of the matter asserted."

■ The Supreme Court taught in *Anderson v. United States*, 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974), that such statements are not hearsay. That case involved a conspiracy by election officials to cast false votes. The prosecution sought to use false testimony given by two of the defendants at a prior hearing to establish that at the time the testimony was given the effort to have fraudulent votes counted was continuing. *Id.* at 216, 94 S.Ct. at 2258. The Court said:

> Out-of-court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted. The election contest testimony of [the defendants], however, was not admitted into evidence in the ... trial to prove the truth of anything asserted therein. Quite the contrary, the point of the prosecutor's introducing those statements was simply to prove that the statements were made so as to establish a foundation for later showing, through other admissible evidence, that they were false. The rationale of the hearsay rule is inapplicable as well. The primary justification for the exclusion of hearsay is the lack of any opportunity for the adversary to cross-examine the absent declarant whose out-of-court statement is introduced into evidence. Here, since the prosecution was not contending that anything [the defendants] said at the election contest was true, the other defendants had no interest in cross-examining them so as to put their credibility in issue.

*Id.* at 219–20, 94 S.Ct. at 2260 (footnotes omitted). The district court, therefore, was correct in ruling that Grenier's and Pierce's statements, which were admitted on the same basis as the testimony admitted in *Anderson,* were not hearsay. As nonhearsay they were admissible as long as they were "relevant in some way to prove the conspiracy charged." *Id.* at 221, 94 S.Ct. at 2261. The statements showed that Grenier and Pierce were trying to conceal what they had done and, therefore, were relevant to prove the existence of the conspiracy between Grenier, Pierce, and Munson.

### B. Coconspirator Statements

Munson alleges that the court erred by allowing Pierce and Christiansen to testify about matters imparted to them by Grenier. Pierce testified about a conversation she had with Grenier on November 19, 1984, the day before the two met with Munson, during which Grenier told her it was Munson who had the cocaine they were going to pick up. Christiansen testified about a conversation he had with Grenier approximately one week after the November 20 transaction:

> It was about where he got busted at the airport. He told me a little bit about it. And he told me he thought it was something to do with the pilot. And he also wanted me to do a deal with George Call. He was scared of George Call, of selling cocaine. He thought he was an undercover agent himself.

■ Munson's appellate counsel, who, we note, was not trial counsel, raises this issue for the first time on appeal. Munson's trial counsel did not object when Pierce and Christiansen gave this testimony. He had objected to previous questions asked of both. The prior objections, however, could not preserve a challenge to all subsequent testimony. *See United States v. Abou-Saada*, 785 F.2d 1, 8–9 (1st Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 3283, 91 L.Ed.2d 572 (1986). In the absence of a timely objection our review is limited to examining the record for plain error, and we will "correct only 'particularly egregious errors' ... that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.' " *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584,

1592, 71 L.Ed.2d 816 (1982); *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)); *see United States v. Griffin,* 818 F.2d 97, 99–100 (1st Cir.1987); *United States v. Lopez,* 709 F.2d 742, 745 (1st Cir.), *cert. denied,* 464 U.S. 861, 104 S.Ct. 187, 78 L.Ed.2d 166 (1983). Nothing of this sort is implicated here.

■ Indeed, Pierce's testimony was admissible under Federal Rule of Evidence 801(d)(2)(E). "[I]f it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy, the hearsay is admissible." *United States v. Petrozziello,* 548 F.2d 20, 23 (1st Cir. 1977). A coconspirator's statement is "in furtherance of the conspiracy" if it "tends to advance the objects of the conspiracy as opposed to thwarting its purpose." *United States v. Fahey,* 769 F.2d 829, 839 (1st Cir.1985). There was substantial evidence, including nonhearsay testimony by Pierce, that a conspiracy existed among Grenier, Munson, and Pierce to distribute cocaine on November 20. The indictment identified the conspiracy as beginning on or about November 18 and continuing until November 20. Grenier's statement was made the day before the trip and concerned arrangements Grenier had made to implement the plan. The statement was in furtherance of the conspiracy because it "identified a fellow conspirator as a source of [cocaine], and was made for the purpose of inducing continued participation in the conspiracy." *United States v. Anderson,* 642 F.2d 281, 285 (9th Cir.1981); *see United States v. Lambros,* 564 F.2d 26, 30 (8th Cir.1977) ("statements of a coconspirator identifying a fellow coconspirator as his source of narcotics are statements made in furtherance of the conspiracy"), *cert. denied,* 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978). Therefore, Pierce's testimony about Grenier's statement was admissible.

■ Munson is correct that Grenier's statement subsequent to November 20 would not be admissible under Rule 801(d)(2)(E). It was not made in furtherance of the November 18–20 conspiracy. If there had been an objection, the district court might well have excluded this testimony; it did so when an objection was made later in the trial to similar testimony offered by another witness. Nevertheless, we fail to see how the statement seriously affected the fairness of Munson's trial. It contributed little, if anything, to the government's case against Munson. There was other, substantial evidence, especially that provided by Pierce, about Munson's involvement in the November 20 transaction. The admission of this testimony was not plain error.

### C. References to a Murder

Norman Grenier, one of Munson's coconspirators in the November 20 transaction, was killed in December 1984. Munson argues that the court erred by allowing Christiansen and Pierce to mention that Grenier had been murdered. There was no timely objection to either testimony.

Pierce's comments were made while she was being cross-examined about the arrangement she made with the government. Pierce said she had been arraigned on drug charges "shortly after Norman's funeral." A while later, still during cross-examination, she was asked why the government gave her $2,100. She responded:

A. Well, Mr. Rogers, you have to understand that there was a murder. I sat next to one. And until the murderer was caught, they felt it would be best if I was put somewhere to be safe.

Christiansen referred to Grenier's murder during direct examination. He was being asked about conversations he had with Munson:

Q. Did you receive any telephone calls from Mr. Munson in December of '84?

A. Yes, I did.

Q. And what was the occasion of those phone calls?

A. It was on behalf of Norman Grenier that was murdered. He called me to find out what was going on.

. . . .

Q. And what was the—what was happening there?

A. He wanted to know—he heard of Norman's death and wanted to know what was going on, and I filled him in on the person that stopped by my house and mentioned about what he was going to do and who I thought it was.

Munson argues that these references should have been excluded under Federal Rule of Evidence 403, which states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." There are two problems with this contention. First, the trial court was not asked to make such an assessment at the time the testimony was given. Second, Pierce's comments were actually elicited by defense counsel on cross-examination. Moreover, we do not see any appreciable harm in the jury's having heard both comments. There was no testimony that Munson was suspected of the murder, nor, from our reading of the transcript, could such an implication be fairly drawn. These references were too isolated and vague to have "greatly heightened the jury's apprehension of the defendant and his friends" as urged by Munson. They do not rise to the level of plain error.

### D. Statements About Other Drug Transactions

Munson's next argument concerns testimony by Pierce, Christiansen, and Lynwood Jackson about drug transactions other than those for which Munson was being tried. Pierce said that on an unspecified date, but at some time other than November 19–20, she was present when Grenier and Munson "were weighing up some cocaine and packaging it." Christiansen testified about a meeting at his house on October 18, 1984, at which Munson was present when another individual gave Grenier money in exchange for cocaine. According to Munson, the court allowed these statements in under the coconspirator ex-

ception of Rule 801(d)(2)(E). No objection was made to Pierce's and Christiansen's statements, however, and the court made no rulings regarding them.

Even if an objection had been made, this testimony would have been admissible under the hearsay exception in Federal Rule of Evidence 404(b) as evidence of other wrongful acts. Under that rule,

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

And, as we have said, "should the evidence prove relevant in any other way it is admissible, subject only to the rarely invoked limitations of Rule 403." *United States v. Zeuli*, 725 F.2d 813, 816 (1st Cir.1984). This testimony by Christiansen and Pierce was relevant to the intent of Grenier and Munson to conspire. As the Court of Appeals for the Fifth Circuit has said,

In every conspiracy case, . . . a not guilty plea renders the defendant's intent a material issue and imposes a difficult burden on the government. Evidence of such extrinsic offenses as may be probative of a defendant's state of mind is admissible unless he "affirmatively take[s] the issue of intent out of the case."

*United States v. Roberts*, 619 F.2d 379, 383 (5th Cir.1980) (citation omitted); *see United States v. Zeuli*, 725 F.2d at 816.

A third bit of evidence to which Munson points was testimony by Lynwood Jackson, who said he bought cocaine from Christiansen on or about July 8, 1983, at which time Christiansen identified Munson as his supplier. Munson's counsel did object to this testimony. The court allowed it in as a coconspirator statement under Rule 801(d)(2)(E) according to the procedure we set forth in *United States v. Petrozziello*, 548 F.2d at 23, and further elucidated in *United States v. Ciampaglia*, 628 F.2d 632, 638 (1st Cir.), *cert. denied*, 449 U.S.

956, 101 S.Ct. 365, 66 L.Ed.2d 221 (1980). After all the testimony had been given the court found that it "was a statement made while Christiansen and the defendant were members of a conspiracy not charged in the indictment, but related to substantive offenses charged in Counts I through III." The court ruled correctly.

■ "It is well established that the applicability of the 'co-conspirator' exception to the hearsay rule is not conditioned on the presence of a conspiracy count in the indictment." *Ottomano v. United States*, 468 F.2d 269, 273 (1st Cir.1972), *cert. denied*, 409 U.S. 1128, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973); *see also, e.g., United States v. Stratton*, 779 F.2d 820, 829 (2d Cir.1985) ("[I]t is not necessary that the Government charge a conspiracy to take advantage of Fed.R.Evid. 801(d)(2)(E). The Government merely needs to demonstrate that the declarant and the defendants against whom the statements are offered are members of a conspiracy in furtherance of which the statements are made...."), *cert. denied*, —— U.S. ——, 106 S.Ct. 2285, 90 L.Ed.2d 726 (1986); *United States v. Williams*, 435 F.2d 642, 645 (9th Cir.1970) (same), *cert. denied*, 401 U.S. 995, 91 S.Ct. 1241, 28 L.Ed.2d 533 (1971); 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 801(d)(2)(E)[01], at 801–229 (1985) (same). Although the only conspiracy charged in the indictment allegedly took place on November 18–20, 1984, the evidence supports the court's finding that Munson and Christiansen were conspiring with respect to the July 1983 transactions charged in the indictment. Christiansen testified that during July 6–8 he was purchasing cocaine from Munson and distributing it to others, including Jackson. Jackson testified that he bought cocaine on or about July 8, and that Munson was present at Christiansen's residence when the transaction took place. Christiansen's statement identifying his source advanced the sale of the cocaine and thus was in furtherance of the conspiracy. *See United States v. Lambros*, 564 F.2d at 30. Jackson's testimony, therefore, was properly admitted.

### E. Recorded Conversations Referring to Other Events

The government played tapes and provided transcripts to the jury of conversations recorded with Christiansen's consent that took place on December 13, 1984, between Christiansen and Munson. Munson argues that the trial court erred by allowing this evidence to be admitted. The specific passages to which he now objects established, according to him, that:

(1) Christiansen made other trips to Munson's home to pick up cocaine;

(2) Munson had "a car load" ready to drive to Maine;

(3) Christiansen owed Munson $33,200;

(4) Before Grenier was killed he had paid off his debt to Munson for the purchase of narcotics;

(5) Munson was writing off a debt owed to him by Christiansen;

(6) Munson "was to have been arrested a year earlier";

(7) Grenier's killers "would get what they deserved"; and

(8) Munson was ready "to break heads" over Grenier's death.

When offering these tapes and transcripts as evidence, the government discussed in general terms the purposes they would serve. Of the passages to which Munson now objects, the government specifically addressed only those regarding debts Christiansen and Grenier owed to Munson. Munson's counsel, who reviewed the tapes and transcripts prior to trial and concurred in the editing of them, did not object to any specific statements. He objected generally to the introduction of the tapes and transcripts and the acts referred to in them on various grounds, including that they were impermissible evidence of other wrongful acts, and were confusing, inaccurate, irrelevant, prejudicial, and unnecessarily cumulative. The district court ruled that "[a]ll of the statements of the defendant constitute admissions. All of them are offered by the government as evidence in support of the government's contentions with respect to the whereabouts, the residence, the associations of this defendant." The court said the statements were not unnecessarily cu-

mulative because they appeared to be corroborative of Pierce's and Christiansen's testimony. In light of defense counsel's failure to alert the trial court to specific objections and his concurrence in the editing of the tapes and transcripts, we will review only for plain error.

■ We find nothing even approaching plain error in the admission of these recorded statements. Munson's argument is that the court should have excluded them under Rule 404(b) as evidence of "crimes, wrongs, or other acts" used to prove Munson's character "in order to show that he acted in conformity therewith." All eight passages, however, are subject to various interpretations. Only the first two appear to be evidence of other wrongful acts. The "other trips" Christiansen made apparently took place in 1983 and could be relevant to the intent of Christiansen to conspire with Munson in the 1983 transactions. If so, they would be admissible under Rule 404(b), to show "motive," "intent," and "knowledge." Because the "car load" statement was made in December 1984 it obviously does not refer to the transactions for which Munson was charged. But this reference to "a car load" is too vague to raise serious concerns about prejudice to Munson. The three comments regarding debts may not be evidence of other acts at all. The government contended that Munson was involved with Grenier and Christiansen in distributing cocaine. The debts about which Munson spoke may at least partly have been due to the transactions for which Munson was charged. As such they would be admissions by Munson and admissible as nonhearsay under Rule 801(d)(2). The same can be said about the comment that an arrest was to have been made; this may refer to one of the 1983 transactions and also be an admission.

If specific objections had been made, the court would have had an opportunity to clear up the ambiguity about these comments. Having failed to do so, Munson cannot now use the ambiguity as a basis for assigning error. We find nothing so prejudicial in any of the eight comments, including the two references to Munson's

reaction to Grenier's death, as to constitute plain error.

### F. Testimony About Plea Agreements

Another argument made for the first time on appeal is that the court erred by allowing the prosecution's witnesses to testify about plea agreements they had made with the government. This contention also fails.

The government's chief witnesses were Pierce and Christiansen. On direct examination, the government asked them if they had entered into a cooperation agreement with the government. Pierce answered that she had agreed to plead guilty to two drug-related charges, but that nothing had been promised in return. Christiansen said he had been promised immunity if he cooperated. No questions were asked on direct examination about Pierce's or Christiansen's promises to testify truthfully. On cross-examination, however, Munson's counsel asked the witnesses about their agreements and made inquiries into lies they had told in the past. Then, on redirect, the government elicited from the two that part of their agreements was to testify truthfully.

Responses were elicited on direct examination of the subsequent seven witnesses that part of their agreements with the government was to testify truthfully. According to the government, this was done "after it appeared all but inevitable that [the witnesses'] credibility would be attacked, in the same way as Christiansen and Pierce, because of their respective agreements."

■ These references to promises to testify truthfully do not constitute plain error. We recently rejected an argument that "informing the jury of the contents of a plea agreement of, at least, normal stripe is error." *United States v. Martin,* 815 F.2d 818, 821 (1st Cir.1987). A defendant may be denied a fair trial if the prosecution portrays itself "as a guarantor of truthfulness" by making personal assurances that the witness is telling the truth or by implicitly vouching for the witness by indicating that information not heard as evidence sup-

ports the testimony. *Id.* at 821. The government's narrow questions about whether these witnesses agreed to tell the truth were not such portrayals.

The government's first two witnesses—who provided the most damaging evidence—were subjected to vigorous cross-examination. Defense counsel attacked their credibility and established that they were testifying because of an arrangement they had made with the government. The government did not act improperly when it responded by asking about their promises to tell the truth. *See United States v. Dukes*, 727 F.2d 34, 43 (2d Cir.1984). For subsequent witnesses, the government may have been rash in initiating the inquiry into the promises to testify truthfully. Such anticipation could lead to error if the government ends up bolstering the witnesses' testimony even though the defense did not want to make an issue of the agreements. But as the Fifth Circuit has said:

> Typically, the fact that a government witness has made a plea bargain with respect to the events at issue is a matter which the defense desires to heavily emphasize as adversely affecting the witness' credibility, giving him an ulterior motive to falsely implicate the defendant. If the terms of the plea bargain are proper, ... then certainly it is appropriate for the government to *respond* by asserting that the agreement provides an incentive to tell the truth rather than to lie. Nor is it reasonable that the government be made to appear as if it were hiding the plea agreement or its terms by being prevented from mentioning them until they are first brought out by the defense, at least assuming that the defense does not waive the right to bring those matters out. Normally, if the agreement is gone into, all proper terms relevant to the witness' motive may be disclosed.

*United States v. Binker*, 795 F.2d 1218, 1225 (5th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1287, 94 L.Ed.2d 144 (1987).

The court instructed the jury that when it judged the credibility of witnesses who had entered into plea agreements, it "may

consider these agreements and the hopes that those witnesses may have for future advantages," and should "evaluate their testimony very carefully." In the light of this admonition, there was little risk that the government's questions about the plea agreements resulted in the witnesses being given undue credibility. There certainly was no plain error.

### III. JURY INSTRUCTIONS

Munson alleges that the court erred in the way it charged the jury on proof beyond a reasonable doubt and on the use of evidence of other wrongful acts. These objections were not raised at trial. After the court had delivered the charge it specifically asked counsel whether they had any objections, and Munson's counsel responded by saying "No, your Honor." Federal Rule of Criminal Procedure 30 states that "[n]o party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." This not having been done, our review is limited to an examination for plain error. *United States v. Coady*, 809 F.2d 119, 123 (1st Cir.1987). We find none.

■ Munson faults the following instruction:

> Now, a reasonable doubt is a fair doubt, based upon reason and common sense, arising from the state of the evidence. It is the kind of doubt that would make a reasonable person hesitate to act in regard to some transaction of importance and seriousness. A reasonable doubt may arise not only from the evidence produced, but from the lack of evidence. No defendant is to be convicted on mere suspicion or conjecture.

Munson alleges that the court's description of reasonable doubt as that "based upon reason and common sense" diluted the burden that the law places on the prosecution. We do not agree. "[A] single instruction to a jury may not be judged in artificial isolation." *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d

368 (1973). The court told the jury that the defendant "is presumed by law to be innocent. The government has the burden of proving to you, beyond a reasonable doubt, that the defendant is guilty. If the government fails to meet its burden, you must acquit the defendant." Then, in trying to define the difficult concept of "reasonable doubt," the court told the jury to exercise its common sense in assessing whether a doubt is reasonable. The court was merely telling the jury to do the obvious. "Instructions which thus urge that the jury's decision should be the product of a rational thought process, while perhaps 'unwisely emphatic,' have been upheld in the overwhelming majority of cases." *United States v. DeVincent,* 632 F.2d 147, 153 (1st Cir.), *cert. denied,* 449 U.S. 986, 101 S.Ct. 405, 66 L.Ed.2d 249 (1980). Viewed in the context of the court's complete and accurate instructions on the presumption of innocence and the government's burden of proof, we find no error. *See United States v. Del Toro Soto,* 676 F.2d 13, 17–18 (1st Cir.1982) (finding no reversible error in an instruction that "a reasonable doubt is a fair doubt, based upon reason and common sense, and arising from the state of the evidence"); *United States v. DeVincent,* 632 F.2d at 153 (finding no reversible error in similar instruction).

Munson also argues that the court erred by instructing the jury that reasonable doubt "would make a reasonable person hesitate to act in regard to some transaction of importance and seriousness." He claims that we expressed disfavor with such an instruction in *United States v. DeWolf,* 696 F.2d 1 (1st Cir.1982). In that case we criticized the continued use of language instructing the jury that proof beyond a reasonable doubt is "such evidence as you would be *willing to rely and act upon* in the most important and vital matters pertaining to your own affairs." *Id.* at 4 (emphasis added). Our criticism was with the phrase "willing to rely and act upon"; we suggested instead the use of "hesitate to act." *Id.; United States v. Del Toro Soto,* 676 F.2d at 17. The district court's instructions were consistent with our teaching, as counsel should have known from reading our cases on this point.

Finally, Munson asserts that the court's instruction on the use of other wrongful acts evidence was improper. He says that by giving this instruction the court abdicated its responsibility to make evidentiary rulings, instead giving "a laundry list to the jury from which it could select whether the evidence was introduced as evidence of plan, preparation, knowledge, intent, opportunity, motive, or absence of accident or mistake." The court, however, addressed and ruled directly on all evidentiary objections made at trial. Any "laundry list" effect was the result of trial counsel's failure to object when the evidence was introduced.

We find that the court's instruction was improper, but for a different reason. After correctly explaining the strictures of Rule 404(b), the court instructed the jury that it must "first find, beyond a reasonable doubt, that the defendant did commit the acts charged in the indictment" before considering other wrongful acts evidence. This in effect made the other wrongful acts evidence extraneous, because the jury was told to consider it only if the government already had met its burden of proof with regard to the charged offenses. Such an instruction is contrary to Rule 404(b), which permits the use of other wrongful acts as part of the evidence to be considered by the jury in determining whether the government has proved the defendant guilty beyond a reasonable doubt. Because the court's instruction eliminated the wrongful acts evidence from the determination of guilt, it was helpful, not harmful, to the defendant.

## IV.  CONCLUSION

When counsel made a timely and specific objection at trial, the court's rulings were faithful to the letter and spirit of the rules of evidence and the law. As to the objections raised in the first instance on appeal, we find no plain error.

*Affirmed.*