UNITED STATES, Appellee,

v.

Marshall P. O'BRIEN, Defendant, Appellant.

No. 91–1871.

United States Court of Appeals, First Circuit.

Heard June 4, 1992.

Decided Aug. 6, 1992.

Robert K. Lamere, by appointment of the Court, with whom Sullivan & Worcester, Boston, Mass., was on brief, for defendant, appellant.

Gary S. Katzmann, Asst. U.S. Atty., with whom A. John Pappalardo, Acting U.S. Atty. and David L. Douglass, Dept. of Justice, Boston, Mass., were on brief, for appellee.

Before CYR, Circuit Judge, RONEY,* Senior Circuit Judge, and BOUDIN, Circuit Judge.

PER CURIAM:

Marshall P. O'Brien challenges his conviction and sentence for being a felon in possession of a firearm on two grounds: *first,* that a mistrial was warranted because a Government witness had improper contact with members of the jury, and *second,* that the court incorrectly defined reasonable doubt in its jury charge. We hold that a sufficient inquiry was made to support the court's finding that the witness' communication with the jurors was harmless, and that the jury charge as a whole adequately conveyed the meaning of reasonable doubt. We affirm.

* Of the Eleventh Circuit, sitting by designation.

*Motion for Mistrial*

On the third day of trial, defense counsel informed the court that Matthew Morais, a police officer who had been summoned as a Government witness, engaged in a conversation with three jurors in the corridor during a recess. On that basis, defense counsel moved for a mistrial. The judge then conducted a full examination of Morais and permitted defense counsel and the prosecutor to *voir dire* him.

Morais responded to the judge's request for the full conversation as follows: "Just that they were locked out of the [jury] room, they were waiting for someone to get in, as far as being—a juror in the federal level, that you didn't have to serve on a local level, and taking the train in. That was it; transportation, getting here. Other than that, that's it." When asked whether, at any point, there was anything said about the case, Morais answered in the negative. Other information elicited during questioning from the court, prosecutor, and defense counsel includes: Morais was aware, with no doubt in his mind, that the persons with whom he had been conversing were jurors for this trial. He knew which door went to the jury room, and had watched the jurors come and go as recess had occurred. He had been standing in that general location in the corridor during the course of the trial with other police officers involved in the case. He had been told not to have conversations in the hall. He had been a witness five or six times before, and a police officer for five years. He was a potential witness in the case. Although Morais' name had been referred to by another officer who testified in the case as being present during part of the investigation of the crime, Morais did not testify. He did not identify himself to the jurors, was not wearing a uniform, and did not indicate from where he came or for what reason he was in the building.

After questioning Morais, the prosecutor sought to have the court conduct an individual *voir dire* of the three jurors as to what they heard, and what impact it would have on their ability to deliberate fairly.

Defense counsel sought only a mistrial and stated that such an inquiry of the jurors "would be worse than the disease." Upon further discussion with the court, defense counsel objected to any further inquiries of the jury. The court sustained the objection, but denied the motion for mistrial on the ground that there was no basis for finding or suspecting that the discussion was about the case or that the discussion would taint the jury in any fashion.

■■■ Since Officer Morais knowingly had an unauthorized communication with the jury, there is a presumption of prejudice that the Government must overcome by showing no effect on the jury. *United States v. Forrest*, 620 F.2d 446, 457 (5th Cir.1980). Any unauthorized private communication between jurors and persons associated with the case is presumptively prejudicial, unless its harmlessness is or becomes apparent. Only communications between jurors and others which concern the case require further inquiry. *See, e.g., Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954); *United States v. Greer*, 620 F.2d 1383, 1385 (10th Cir.1980); *United States v. Doe*, 513 F.2d 709, 711 (1st Cir.1975). In other words, any unauthorized communication between any person who is associated with the case, or who has an interest in the outcome of the case, and a juror would have the potential for being prejudicial. The court would then need to conduct sufficient inquiry to determine whether the communication was harmless. On the other hand, unsequestered jurors usually have frequent communication outside the courtroom with persons not connected with the case. In those instances where it is shown that there was a communication about the case, the communication would be deemed prejudicial unless shown to be harmless.

■■ Morais was connected with the case. It was, therefore, incumbent on the Government to show that the communication was harmless. A review of the record supports the district court's conclusion that sufficient evidence was produced to demonstrate that the communication would not affect the jury, and thus the court did not abuse its discretion in denying the motion. *Real v. Hogan*, 828 F.2d 58, 61 (1st Cir. 1987). The record shows that the communication was not about the case. *Remmer*, 347 U.S. at 229, 74 S.Ct. at 451. The judge, the prosecutor, and defense counsel each questioned Morais immediately after the conversation took place. The conversation had nothing to do with the case, and Morais never identified himself as a policeman or a potential witness. A communication, which is unrelated to the case, between a person involved with the case and a juror might be deemed prejudicial. Such a communication, however, could not possibly have a prejudicial effect when the jury did not know that the communicant was involved with the case.

A Tenth Circuit Case is similar on the facts. A juror and a federal agent who had been sitting at the prosecutor's table during the trial had a conversation in the restroom during a recess. The agent and the juror exchanged greetings which brought a response from the juror that he felt "sleepy." At that time, the agent remarked, referring to a tape recording which the Government put into evidence, "[w]ell, this may put you to sleep." The court determined that the conversation was merely a "casual, time-of-the-day greeting" and was not prejudicial to the defendants. *See United States v. Day*, 830 F.2d 1099, 1104 (10th Cir.1987). The *Day* case presented a more challenging issue than this case. Unlike the federal agent in *Day*, Officer Morais did not sit at the prosecutor's table, he was unknown to the jury, and he did not discuss any aspect of the case with the jurors, and did not testify.

Even if Officer Morais knowingly violated the judge's instruction not to talk to the jury, the record does not show that the discussion was about the case or that it would taint the jury in any way. The presumption of prejudice was overcome by the *voir dire* examination of the witness, and the defendants presented no rebuttal evidence demonstrating actual prejudice.

The defendant cites cases in which juror contact was deemed presumptively prejudicial and resulted in mistrial even though

there was no discussion of the case itself. In those cases however, the party involved in the improper communication had a *substantial* role in the case. Morais was only a potential witness, virtually unknown to the jurors, and in fact did not testify. There is nothing to show that the jurors could identify him as being the officer referred to by another witness. *See, e.g., United States v. Betner,* 489 F.2d 116 (5th Cir.1974) (prosecutor had conversation with jury panel during recess); *Richardson v. United States,* 360 F.2d 366 (5th Cir.1966) (principal prosecution witness had private conversation with juror); *Pekar v. United States,* 315 F.2d 319 (5th Cir.1963) (Assistant United States Attorney had conversation with juror during recess).

■ The defendant's argument that the district judge did not go far enough in its investigation to establish that no prejudice would result from the communication fails because it was defense counsel who objected to an additional inquiry of the jurors concerning the improper contact. "When a colorable claim of jury misconduct surfaces, the district court has broad discretion to determine the type of investigation which must be mounted." *United States v. Boylan,* 898 F.2d 230, 258 (1st Cir.), *cert denied,* — U.S. —, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990).

### Reasonable Doubt

At the conclusion of the trial, the court in its instructions to the jury defined reasonable doubt as follows: "A reasonable doubt is a doubt in the mind of a reasonable juror who is seeking the truth. Reasonable doubt exists when, after weighing and considering all the evidence, using reason and common sense, jurors cannot say that they have a settled conviction of the truth of the charge." After the charge, defense counsel objected to the court's definition, and asked the judge to charge the jury using the "hesitate to act in the most important of your affairs" language in defining reasonable doubt. The district court judge ruled that the First Circuit has suggested that the "hesitate to act" language should not be used and thus refused to modify the charge. We find no error.

■ Contrary to O'Brien's argument, the district court's refusal to include the phrase "hesitate to act in the most important of your affairs" in its instruction on reasonable doubt does not constitute reversible error. This Court has previously criticized instructions which compare reasonable doubt to the decisional standard used by individual jurors in their own affairs as trivializing the constitutionally required burden of proof. *United States v. Noone,* 913 F.2d 20, 29 (1st Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1686, 114 L.Ed.2d 81 (1991); *United States v. Sorrentino,* 726 F.2d 876, 882–83 (1st Cir. 1984); *United States v. Cranston,* 686 F.2d 56, 62 (1st Cir.1982); *United States v. Drake,* 673 F.2d 15, 20 (1st Cir.1982); *Dunn v. Perrin,* 570 F.2d 21, 24 (1st Cir.), *cert. denied,* 437 U.S. 910, 98 S.Ct. 3102, 57 L.Ed.2d 1141 (1978).

There are First Circuit cases in which we have affirmed the use of the phrase "hesitate to act" in defining reasonable doubt. *See, e.g., United States v. Munson,* 819 F.2d 337, 346 (1st Cir.1987); *United States v. Del Toro Soto,* 676 F.2d 13, 17 (1st Cir.1982). In *Del Toro Soto,* we suggested the phrase "hesitate to act" rather than "willing to rely and act upon," *Del Toro Soto,* 676 F.2d at 17, and in *Munson,* we affirmed an instruction that reasonable doubt "would make a reasonable person hesitate to act in regard to some transaction of importance and seriousness." *Munson* 819 F.2d at 346. The language used or suggested in each instruction was an attempt to make the instruction less personalized to the jurors or an attempt not to reduce the Government's burden of proof. *See Drake,* 673 F.2d at 20 (comparing reasonable doubt standard with important decisions in juror's own life impermissibly reduces Government's burden of proof). Such instructions do not contradict our disapproval of defining reasonable doubt in terms of decisions relating to affairs in a juror's life. *Noone,* 913 F.2d at 28.

The momentous decision to acquit or convict a criminal defendant cannot be com-

pared with ordinary decision-making without risking trivialization of the constitutional standard.... We have yet to suggest, however, that equivalent constitutional concerns are occasioned by analogizing reasonable doubt to the decisional standard employed by the "reasonable person" customarily hypothesized by courts of law as an objective decisionmaker less vulnerable to subjective contamination than the "flesh and blood" variety. Nonetheless, we admonish against the use of any such instruction, as an altogether unnecessary embellishment that risks juror misunderstanding of the reasonable doubt standard.

*Noone,* 913 F.2d at 29 (citation omitted).

No cases have been called to our attention in which a district judge *must* use the "hesitate to act" language when defining reasonable doubt. So long as the charge, taken as a whole, correctly conveys the concept of reasonable doubt·to the jury, no reversible error exists. *See Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150 (1954); *Munson,* 819 F.2d at 346; *Del Toro Soto,* 676 F.2d at 17; *Drake,* 673 F.2d at 20. This Court has emphasized that reasonable doubt does not require a specific definition. *United States v. Rodriguez–Cardona,* 924 F.2d 1148, 1160 (1st Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991).

The defendant contends for the first time on appeal that the district court used language in its charge regarding settled conviction as to the truth of the charges, which fails to emphasize to the jury the seriousness of their decision making role, and has the potential for impermissibly reducing the Government's burden of proof. This argument is reviewable only for plain error. Fed.R.Crim.P. 30 and 52(b). Read as a whole, the jury instructions comply with the teachings of this Court, and accurately placed the burden of proof.

*Affirmed.*