UNITED STATES of America, Plaintiff,

v.

John L. TINCHER, William K. Tincher, James E. Acord, Defendants.

No. CR–2–88–136.

United States District Court, S.D. Ohio, E.D.

Nov. 13, 1990.

Bradley D. Barbin, Asst. U.S. Atty., Columbus, Ohio, for plaintiff.

Kevin Patrick Durkin, Columbus Ohio, for defendant William K. Tincher.

Steven M. Brown, Columbus, Ohio, for defendant James E. Acord.

Dennis C. Belli, Columbus, Ohio, for defendant John L. Tincher.

## MEMORANDUM OPINION AND ORDER

GRAHAM, District Judge.

This matter is before the court on remand from the court of appeals for further proceedings to determine whether a Jencks Act violation occurred in this case. The court has conducted an evidentiary hearing. Upon review of the record, the court has concluded that there was a failure to disclose Jencks Act testimony, but that the nondisclosure was unintentional, that defendants were in no way prejudiced by the nondisclosure, and that a new trial is not warranted.

## HISTORY OF THESE PROCEEDINGS

Defendants John L. Tincher, William K. Tincher and James E. Acord were convicted by a jury on September 28, 1988 of conspiracy to pass counterfeit notes in violation of 18 U.S.C. § 371. Defendant John Tincher was also convicted of one count of uttering a counterfeit note in violation of 18 U.S.C. § 472 and one count of possession with intent to use counterfeit notes in violation of 18 U.S.C. § 474. Defendant Acord was also convicted of one count of attempting to utter a counterfeit note in violation of 18 U.S.C. § 472.

Defendants pursued an appeal from their convictions to the Sixth Circuit Court of Appeals. In his brief filed with the court of appeals, defendant Acord asserted for the first time that the Government had failed to provide a transcript of the grand jury testimony of Special Agent Gregory Campbell, the case agent, in response to his request for Jencks Act materials pursuant to 18 U.S.C. § 3500. The Government admitted during oral argument that Agent Campbell had testified before the grand jury and that the grand jury testimony was not provided to defense counsel or to this court during trial. The court of appeals, noting that the grand jury testimony was not a part of the record before it, reversed the defendants' convictions and remanded the case to this court for review of the grand jury testimony under the Jencks Act. *See United States v. Tincher*, 907 F.2d 600 (6th Cir.1990).

After remand, this court issued an order scheduling an evidentiary hearing pursuant to the procedure outlined in *Goldberg v. United States*, 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976). The evidentiary hearing was held on September 20, 1990 and October 5, 1990.

Agent Campbell testified at the hearing on September 20 that he appeared before the grand jury on August 11, 1988. He stated that he did not review a transcript of his grand jury testimony prior to trial, nor did he recall discussing the matter of grand jury testimony with anyone during trial. He first learned that a request had been made for the grand jury transcript when notified of the evidentiary hearing. Agent Campbell further indicated that he reviewed his memorandum report dictated on August 4, 1988 to refresh his recollection prior to testifying before the grand jury and prior to trial on September 26, 1988. He recalled that he turned over all of his written reports to counsel for the Government, and that defense counsel were given the opportunity to review portions of his report.

The Government's trial counsel in this case testified at the hearing on October 5, 1990. Government counsel testified that he was informed for the first time shortly before oral argument in the court of appeals that Agent Campbell's grand jury testimony had not been provided during trial, and that he was surprised and shocked by this information. Counsel testified that his standard procedure was to place information pertaining to each wit-

ness in individual folders, and that finding no grand jury testimony in Agent Campbell's folder, he assumed there was none. At the time of the request for Jencks Act materials made by counsel for defendant Acord, he was unaware of the existence of grand jury testimony by Agent Campbell.

Government counsel further testified that he could not recall whether he ordered a transcript from the reporter, and that he did not know why Agent Campbell's testimony was not transcribed. He indicated he may have left the grand jury room thinking he would be back, or that there may have been a miscommunication with the reporter about ordering a transcript. Counsel further stated that he did not address the disclosure of grand jury testimony in his appellate brief. He indicated he may have overlooked the argument, or that he might have discounted it, thinking that it must have been Agent Montgomery, the other Secret Service agent involved in the investigation, who testified before the grand jury. He denied making any deliberate misrepresentations to this court or to counsel.

Counsel for the Government further testified that portions of Agent Campbell's report, including those portions relating to the statements made by the defendants, were provided to defense counsel. Agent Campbell's notes were also made available. Counsel indicated that he frequently turned over Jencks Act materials even when the defense counsel in a case did not request it. He indicated that judging from the questions asked during trial, virtually all of Agent Campbell's report was given to the defense.

The Government also called as a witness a member of the defense bar with fifteen years federal trial experience to testify concerning his prior contacts with the Government's trial counsel. This witness indicated that he was frequently in a position to know what Jencks Act materials he should receive due to his practice of independently investigating his cases and interviewing witnesses. He indicated that in his eleven years of contact with this Government counsel, he had never known him to misstate information or fail to disclose information to which the defense was entitled.

The court reporter for the grand jury testified that Agent Campbell appeared before the grand jury for fifteen minutes, between 9:35 a.m. and 9:50 a.m., on August 11, 1988. The transcript of Agent Campbell was not ordered until August 3, 1989 and was transmitted to the U.S. Attorney's Office on August 9, 1989. The reporter's records did not reflect that a transcript of Agent Campbell's testimony was ordered by counsel when he testified on August 11, 1988. She stated that it was her usual practice to inquire of counsel in person or by phone as to whether a transcript would be ordered, but she had no recollection as to whether she had followed that procedure in this case.

Two attorneys were called by the defense to testify concerning their experience with Government counsel in previous cases. One attorney testified that he was defense counsel in a case in state court in 1982 in which Government counsel was involved as an assistant prosecutor. This attorney indicated that he learned while cross-examining a witness that the witness had made a taped statement to Government counsel. Government counsel, who was not lead counsel on that case, indicated that he had forgotten about the tape. The tape was produced, and defense counsel did not use the tape for further cross-examination because it was consistent with the witness's trial testimony.

The second attorney testified concerning a prior appeal in state court in which Government counsel was also involved as an assistant prosecutor. The attorney's recollection of the circumstances was not clear, but he recalled that some misstatement of law or fact had been made in the brief. Government counsel had not been involved in the prior proceedings in that case, and after oral argument, he apologized to defense counsel and seemed embarrassed by the misunderstanding. This attorney then made laudatory comments about Government counsel's professionalism.

## LEGAL ISSUES ON REMAND

The first issue raised by defendants concerns the scope of this court's inquiry on

remand. Defendants argue that the remand order solely authorizes inquiry into whether the grand jury testimony constitutes a statement under the Jencks Act. Defendants assert that the court of appeals has already determined that the failure to disclose the transcript was deliberate. Defendants further argue that a harmless error analysis is inappropriate, and that if this court finds that the transcript should have been disclosed under the Jencks Act, the only course open to this court would be to discharge the defendants. Defendants argue in the alternative that even if this court does decide to employ a harmless error analysis, the failure to disclose the transcript was prejudicial to defendants.

The court of appeals remanded this case "for consideration of the grand jury testimony." *Tincher*, 907 F.2d at 603. Defendants assert that if a Jencks violation is found, that should end the inquiry.[1] However, it is a function of a district court under the Jencks Act not only to determine whether a violation has occurred, but also to decide the nature of the sanction, if any, which will be imposed.

■ The existence of a Jencks Act violation does not *per se* require the declaration of a mistrial or a retrial in every case. Rather, the circumstances surrounding the violation must be considered. If the government elects, that is, makes a knowing and conscious choice, not to disclose a statement, the court, pursuant to 18 U.S.C. § 3500(d), must either strike the testimony of the witness who made the prior statement, or order a new trial. *United States v. Pope*, 574 F.2d 320, 325 (6th Cir.1978). However, where the Act is violated through negligent conduct or oversight not amounting to a conscious election, the trial judge is entitled to apply "such a remedy as the justice of the case might require under the circumstances." *Id.* As the court noted in *United States v. Izzi*, 613 F.2d 1205, 1213 (1st Cir.1980), "We have

found no case holding that an inadvertent or negligent failure to furnish Jencks Act material is *per se* grounds for a new trial." Thus, one factor relevant to a Jencks Act inquiry is whether the violation was the result of deliberate conduct or mere negligence, mistake or inadvertence.

■ Another salient factor in determining the appropriate sanction for a Jencks Act violation is whether the defendant was harmed by the violation. The Supreme Court has held that Jencks Act violations may be subject to the harmless error rule. *Rosenberg v. United States*, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959). The harmless error doctrine must be "strictly applied" in Jencks Act cases. *Goldberg v. United States*, 425 U.S. 94, 111, 96 S.Ct. 1338, 1348, 47 L.Ed.2d 603 (1976). However, "neither the Supreme Court nor the lower federal courts have been especially reluctant to find a Jencks Act violation harmless." *United States v. Del Toro Soto*, 728 F.2d 44, 48 (1st Cir.1984). As the the Supreme Court noted in *Rosenberg*, 360 U.S. at 371, 79 S.Ct. at 1234:

> An appellate court should not confidently guess what defendant's attorney might have found useful for impeachment purposes in withheld documents to which the defense is entitled. However, when the very same information was possessed by defendant's counsel as would have been available were error not committed, it would offend common sense and the fair administration of justice to order a new trial.

The First Circuit also discussed the strict application rule in *Del Toro Soto*, 728 F.2d at 48:

> We do not doubt for a moment the wisdom of a cautious application of the harmless error rule when Jencks Act rights have been implicated. The cases just discussed, however, reflect the prac-

---

**1.** Defendants urge that the entry of a judgment of acquittal is the appropriate remedy in the event that a Jencks Act violation is found. However, the existence of a Jencks Act violation in this case would not bar retrial of the defendants. Where a defendant, following a conviction, is successful in obtaining a reversal of that conviction on appeal, retrial is not barred by the

Double Jeopardy Clause. *See United States v. DiFrancesco*, 449 U.S. 117, 131, 101 S.Ct. 426, 434, 66 L.Ed.2d 328 (1980); *Jeffers v. United States*, 432 U.S. 137, 152, 97 S.Ct. 2207, 2217, 53 L.Ed.2d 168 (1977); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

tical necessity of invoking the doctrine when the failure to do so would exacerbate the considerable burdens of our system of justice without furthering any important goal.

The Sixth Circuit has often invoked the harmless error rule in cases of Jencks Act violations. In *United States v. Dye*, 508 F.2d 1226, 1235 (6th Cir.1974), the court found that the unintentional failure to produce eight prior statements of a witness was harmless error where other statements were produced and were utilized by the defense for cross-examination, and where the eight statements "would have provided little if any additional material for cross-examination by counsel for defendants." In *Pope*, 574 F.2d at 327, the court held that the untimely disclosure of a Jencks Act statement was not prejudicial where the substance of the information in the statement was already known by the defense through its possession of a grand jury transcript. Recently in *United States v. Webster*, 914 F.2d 259 (6th Cir.1990), the court held that the failure to disclose a Jencks Act statement was harmless where the defense possessed a virtually identical report.

Other courts have also applied a harmless error analysis to Jencks Act materials. Harmless error has been found where there was no substantial deviation between the witness's prior statements and trial testimony, *United States v. Welch*, 817 F.2d 273 (5th Cir.1987); *United States v. Sink*, 586 F.2d 1041 (5th Cir.1978); or where the statement corroborated the witness's testimony, *United States v. Anderson*, 574 F.2d 1347 (5th Cir.1978). Jencks Act violations have been found to be harmless where the same information was given to the defense in some other form during trial. *See Rosenberg*, 360 U.S. at 371, 79 S.Ct. at 1234; *United States v. Pepe*, 747 F.2d 632 (11th Cir.1984); *United States v. Sterling*, 742 F.2d 521 (9th Cir.1984) (grand jury testimony duplicative); *Del Toro Soto*, 728 F.2d at 48; *United States v. Tashjian*, 660 F.2d 829 (1st Cir.1981) (no material differences between statements); *United States v. Anthony*, 565 F.2d 533 (8th Cir. 1977).

In *United States v. Wallace*, 848 F.2d 1464, 1471 (9th Cir.1988), the court held

that a conviction will be affirmed where a Jencks Act violation "is more likely than not harmless." A Jencks Act violation has been held to be harmless where it had no "substantial influence" on the judgment. *United States v. McKenzie*, 768 F.2d 602, 609 (5th Cir.1985). Another circuit has found harmless error where it is "perfectly clear" that the nondisclosure did not prejudice defendant. *See United States v. Wables*, 731 F.2d 440, 448 (7th Cir.1984). The Second Circuit has held that where the failure to disclose was inadvertent or negligent, a new trial is required only if there is a significant chance that this added item, developed by skilled counsel, could have induced a reasonable doubt in the minds of enough jurors to avoid a conviction. *United States v. Miranda*, 526 F.2d 1319, 1323 (2d Cir.1975). Harmless error has also been found where "the light caliber of the impeachment ammunition furnished by the grand jury testimony would not have dented the well buttressed evidence of the government." *Izzi*, 613 F.2d at 1213. *See also Sink*, 586 F.2d at 1051 (minor discrepancies of no real value to defendant for impeachment purposes).

The above authorities indicate that a review by this court to determine only whether a Jencks violation occurred would result in the application of a *per se* rule, contrary to established law. There is no language in the opinion of the court of appeals in this case which suggests that the court intended to apply a *per se* rule or to foreclose an examination of all of the circumstances surrounding the violation.

Defendants contend, however, that the court of appeals has ruled that Government counsel made a deliberate misrepresentation to this court in regard to the existence of the grand jury transcript, and that this determination constitutes the law of the case, precluding inquiry by this court as to whether any withholding of Jencks act materials was deliberate. This court does not agree with defendants' interpretation of the opinion. The court of appeals, based upon the information presented in the briefs and at oral argument, was justifiably concerned that a deliberate violation of the Jencks Act may have occurred in this case.

However, since the Jencks Act issue was raised for the first time during the appellate process, the court of appeals recognized that it did not have an adequate record before it to determine whether the grand jury testimony constituted a Jencks statement. *A fortiori,* the court of appeals did not have a sufficient record before it to determine the circumstances behind the failure to disclose the transcript. Therefore, according to well-established procedures, the court of appeals remanded the matter to this court to make the requisite findings under the Jencks Act.

The Supreme Court has held that it is the district courts, not the appellate courts, which are entrusted with the duty of examining documents for Jencks Act material. *Campbell v. United States,* 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963) (*Campbell II*). It is the responsibility of the district court to determine in the first instance whether a document constitutes a statement under the Act, and if so, to determine whether and what sanctions might be appropriate. *United States v. Simtob,* 901 F.2d 799, 808 (9th Cir.1990); *United States v. Truong Dinh Hung,* 629 F.2d 908, 920 (4th Cir.1980). The Supreme Court in *Goldberg,* 425 U.S. at 108, 111, 96 S.Ct. at 1347, 1348, held that the court of appeals erred in making the initial determination that certain materials constituted producible "statements," and outlined the following procedure on remand:

> Petitioner is entitled to a redetermination of his motion for the production of the 237 pages of material. But we do not think that this Court should vacate his conviction and order a new trial, since petitioner's rights can be fully protected by a remand to the trial court with direction to hold an inquiry consistent with this opinion. The District Court will supplement the record with findings and enter a new final judgment of conviction if the court concludes after the inquiry to reaffirm its denial of petitioner's motions. This procedure will preserve petitioner's opportunity to seek further appellate review on the augmented record. On the other hand, if the court concludes that the Government should have been required to deliver the material, or part

of it, to petitioner, and that the error was not harmless, the District Court will vacate the judgment of conviction and accord petitioner a new trial. (Footnote omitted).

The Sixth Circuit has adopted a like posture in Jencks Act cases. In *United States v. Chitwood,* 457 F.2d 676, 678–679 (6th Cir.1972), the court noted:

> We are not inclined as a general procedure to make initial determinations from the record which more appropriately should be made by the District Court subject to review by this court under [the] clearly erroneous standard. The "judge who presided at the trial is uniquely situated to make ... the determination of whether failure to require production of the questioned statement to appellant, if error, might have been prejudicial." *Lloyd v. United States,* 412 F.2d 1084, 1088 (5th Cir.1969) (footnote omitted).

In light of the foregoing authorities, this court concludes that the scope of the remand order is sufficiently broad to include an inquiry into whether the grand jury transcript constituted a statement under the Jencks Act, and if so, whether counsel for the government acted deliberately in failing to disclose the testimony, whether the defendants were prejudiced by the nondisclosure, and what sanction, if any, should be imposed. The hearing conducted by the court will furnish the court of appeals with the record necessary to review this court's findings under the clearly erroneous standard. Therefore, keeping in mind the principle that the harmless error doctrine must be strictly applied in favor of defendants in Jencks Act cases, the court now proceeds to examine the transcript in question.

## DETERMINATION OF JENCKS ACT VIOLATION

The Jencks Act, 18 U.S.C. § 3500(b) provides in relevant part:

> After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to

produce any statements (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.

Under 18 U.S.C. § 3500(e)(3), the term "statement" includes the statement of a witness to a grand jury. Here, the grand jury testimony of Agent Campbell constituted a "statement" under the Jencks Act. The remaining issue is whether the grand jury testimony related to the subject matter of Agent Campbell's trial testimony.

At trial, Agent Campbell testified on direct concerning his commencement of the investigation by proceeding to the Clinton Township Police Department (Trial Tr. pp. 139–140), his trip to the Village Thrift Store (Trial Tr. pp. 149–150), the interview with John Tincher (Trial Tr. pp. 140–148, 152–155), the interview with William Tincher (Trial Tr. pp. 157–167) and the interview with James Acord (Trial Tr. pp. 167–174). He also testified regarding the difference between genuine and counterfeit currency, and gave his opinion concerning the counterfeit or genuine nature of the various notes introduced into evidence. (Trial Tr. pp. 174–186).

Most of the grand jury testimony of Agent Campbell relates to the subject matter of his trial testimony. The portions of the grand jury testimony which do not relate to matters about which Agent Campbell testified at trial are as follows:

1) The summary of information obtained from the Clinton Township Police Department (Grand Jury Tr., p. 5, lines 9 to 23; p. 6, lines 1 to 9);

2) The description of the investigation at the Village Thrift Store and Village Flea Market (Grand Jury Tr., p. 10, lines 21 to 23; p. 11, lines 1 to 14);

3) The purposes of passing counterfeit currency (Grand Jury Tr., p. 12, lines 2 to 15);

4) The description of Clinton Township police officers arresting James Acord (Grand Jury Tr. p. 14, lines 1 to 6); and

5) The description of the photo array procedure (Grand Jury Tr., p. 15, lines 2 to 10).

With the exception of parts one through five above, the court finds that the grand jury testimony relates to the subject matter of Agent Campbell's trial testimony, and was a statement subject to disclosure under the Jencks Act.

## NATURE OF THE VIOLATION

██ The court has heard testimony concerning the circumstances behind the non-disclosure in this case. The record of the case reveals that defendants John Tincher and James Acord filed pretrial motions requesting Jencks Act materials in general. The only request for Jencks and Brady material made after Agent Campbell's testimony was made by counsel for defendant Acord. No specific reference was made to grand jury testimony in any of these requests, nor did defense counsel bring his suspicion concerning the existence of grand jury testimony to the attention of this court.

Counsel for the Government has indicated that his failure to turn over the grand jury testimony was due to inadvertence or mistake. The court finds counsel's representations in that regard to be credible. The court finds that due to mistake, oversight, or miscommunication, the transcript had not been ordered from the court reporter and did not exist at the time of trial. The court finds that the testimony and records of the court reporter do not establish that Government counsel deliberately refrained from ordering the transcript. The court reporter had no specific recollection of the case. The records also reveal that the grand jury proceedings lasted fifteen minutes, from 9:35 a.m. to 9:50 a.m. Government counsel testified that he may have simply forgotten to order the transcript, thinking that he would be back later that day, or that there may have been miscommunication.

The court concludes that counsel's reliance on his system of using witness folders contributed to his failure to recall the fact that Agent Campbell testified before the grand jury, but that this reliance did not convert the failure to disclose into a bad faith or intentional act. Rather, the failure to disclose was due to mistake or

inadvertence, or at most to mere negligence. The court notes that both Agent Campbell and Agent Montgomery were involved in the investigation, and that Agent Montgomery did not testify at trial. Counsel testified that in responding to defendant Acord's brief, he may have discounted the Jencks argument because he thought that Agent Montgomery must have testified before the grand jury. Since two agents were involved in the case and available to testify before the grand jury, and since Agent Montgomery did not testify at trial, the court concludes that the absence of Agent Campbell's grand jury testimony from his witness folder would not necessarily or reasonably have alerted counsel that Jencks Act materials were missing. No other specific mention was made concerning grand jury testimony during trial, either by defendants or Agent Campbell, which would have reminded counsel about the grand jury testimony.

Government counsel's conscientious deliveries of other Jencks Act materials during trial offer further indication that the nondisclosure of the grand jury testimony was completely unintentional. At the hearing on October 5, 1990, Government counsel acknowledged his responsibilities under the Jencks Act, and stated that on occasion, he had provided such materials even in the absence of a request by counsel. Jencks Act materials were provided throughout the trial, and when disclosure of a particular document was disputed, the matter was brought to the court's attention for a ruling. As discussed *infra*, the majority of Agent Campbell's report and his handwritten notes were provided for inspection. The report contained most of the information included in Agent Campbell's grand jury testimony, and was more detailed. There was no motive for Government counsel to deliberately conceal the grand jury transcript in light of the fact that basically the same information had been provided through the report.

The court is not persuaded by defendants' efforts to impeach government counsel. Counsel's involvement in any Jencks Act violation in the *Jesus Pastor* case, in which counsel for William Tincher was also involved, was not established, particularly since counsel assumed responsibility for that case shortly before trial and was not the attorney for the Government in the grand jury proceedings. Defendants also note that Government counsel did not file portions of Agent Campbell's report under seal as this court ordered during trial. However, there is no evidence that counsel deliberately disregarded this court's order, and any confusion concerning the order would be understandable and certainly harmless in light of the fact that both portions of the report ordered to be placed under seal, those being pages 3–4 and part of page 8, were subsequently disclosed to the defense during trial. (Trial Tr., pp. 13–14, 22; pp. 77, 235). The evidence concerning the two state court prosecutions did not establish a deliberate intent on the part of counsel to conceal evidence or to make misrepresentations. The court notes that defense counsel in one of those state prosecutions testified that Government counsel "is one of the few people whose word I would take almost carte blanche. I hold him in highest esteem." (October 5, 1990 Hrg., p 127). Another eminent member of the defense bar testified, "Nobody that I opposed in a courtroom has behaved more ethically than [Government counsel]." (October 5, 1990 Hrg., p. 109).

The court, upon considering the evidence, finds that the failure to disclose the grand jury testimony of Agent Campbell was the result of mistake or inadvertence, and was not a bad faith, deliberate or intentional act on the part of Government counsel. The court finds that the grand jury testimony was not transcribed and transmitted until August of 1989, long after the trial and the filing of briefs in the court of appeals, and that the transcript was not contained in the Government's file before that time. The court finds that the specific topic of grand jury testimony was not discussed by counsel or Agent Campbell before or during trial. The court further finds that Government counsel did not recall that Agent Campbell had testified before the grand jury, and that his statement that all Jencks, *Brady* and discoverable materials had been disclosed did not constitute a deliberate misrepresentation, but rather reflected

what counsel honestly believed to be true at the time. Government counsel was unaware until shortly before oral argument, which was handled by another assistant U.S. attorney, that the grand jury testimony had not been disclosed.

### PREJUDICE TO THE DEFENDANTS

■ The remaining factor which must be considered is the prejudice to defendants, if any, caused by the failure to disclose the grand jury testimony. Before the court are the trial transcripts, the transcripts of the hearings before this court, and various exhibits introduced by the parties.

Counsel for defendant William Tincher has moved to strike portions of the Government's brief. Specifically, defendant moves to strike the allegation that counsel for William Tincher made misstatements to the court of appeals relating to counsel's sponsorship of government counsel's wife to the Sixth Circuit. This matter is not relevant to this court's inquiry, and defendant's motion to strike that portion of the brief is granted.

Defendant William Tincher moves to strike Exhibits "A" and "B", which are attached to the Government's brief. Exhibit "A" is a compilation of segments from the grand jury transcript juxtaposed with corresponding segments of Agent Campbell's trial testimony. The court finds that Exhibit "A" is in the nature of argument, not evidence, and the court will consider it solely as argument. Defendants had the opportunity to respond to this document in their reply briefs. Defendant's motion to strike Exhibit "A" is denied.

Defendant William Tincher also moves to strike the document labelled Exhibit "B", which is a reproduction of Government's Exhibit 2, Agent Campbell's report of August 4, 1988. This report was identified by Agent Campbell at the morning session of the September 20, 1990 hearing, and was admitted into evidence by the court on the Government's motion. (Sept. 20, 1990 Hrg., morning session, p. 22). Defendant's motion to strike Exhibit "B" is denied.

The defendants in their briefs and during the hearings pointed to several alleged inconsistencies between the grand jury testimony and trial testimony of Agent Campbell. Defendants allege that they were prejudiced by the lack of disclosure. The Government argues that any inconsistencies were of little or no impeachment value, and that the defendants had access to most of the information in the transcript because they were allowed to inspect most of Agent Campbell's report.

Both Agent Campbell and Government counsel testified that to the best of their recollection, defense counsel were allowed to review Agent Campbell's report and the interview notes from which the report was compiled during the trial. Defendants offered no evidence which would indicate that they did not see the report and notes. There are several references throughout the trial transcript to both the report and the notes which indicate that counsel were permitted to review those documents. The court finds that defendants were permitted to review Agent Campbell's report, with the exception of the lower half of page 8 after the word "negative", during trial, and were also given access to his original interview notes.

The court will now address the alleged inconsistencies noted by defendants:

(1) Defendant William Tincher notes that on page 11, line 16 of the grand jury testimony, Agent Campbell stated that "I interviewed William K. Tincher and advised him of his constitutional rights." Defendant contends that this was inconsistent with the agent's trial testimony, page 160, where the agent stated he advised defendant of his constitutional rights and then talked to him. In Agent Campbell's report, page 6, it is noted that defendant was advised of his rights prior to the interview. The court finds that there is no inconsistency here. Agent Campbell's statement before the grand jury was in response to the question "Did you interview the other Tincher brother?" Agent Campbell responded to this question first before adding the information that he advised defendant of his rights. Agent Campbell's grand jury testimony cannot be reasonably construed as implying that the interview preceded the rights waiver.

(2) At page 14 of the grand jury transcript, Agent Campbell relates that defendant Acord stated he was informed by the clerk at Amos Lanes that "this note doesn't look real." At page 171 of the trial transcript and page 7 of his report, Agent Campbell relates that he was told by defendant Acord that the clerk stated the "note wasn't real." The court finds that these phrases are not inconsistent. Further, any semantic difference is immaterial from a substantive standpoint since, regardless of whether defendant Acord claimed he was told by the clerk that the note wasn't real or did not look real, he admitted to Agent Campbell that he knew it was counterfeit.

(3) At page 14 of the grand jury transcript, Agent Campbell stated he was told by defendant Acord that he threw a counterfeit fifty dollar note and a counterfeit hundred dollar note down the sewer. At page 172 of the trial transcript and page 7 of the report, defendant Acord was quoted as saying that he threw two fifty dollar notes down the sewer. The court finds that the grand jury testimony is inconsistent, but that the inconsistency would have been of no significant impeachment value to defendant. The face value of the second note was of no importance, since there was no known attempt to utter it and since it was never recovered. Further, Agent Campbell's trial testimony was consistent with his report.

(4) At the hearing, defendant Acord noted that at page 14 of the grand jury transcript, Agent Campbell testified that the Clinton Township police officers were involved in a foot chase with defendant Acord, and that this was inconsistent with the trial testimony of Officer Staples, who stated that defendant Acord was "loping around" or moving with a "quick stride." However, Agent Campbell did not testify concerning this matter at trial. His testimony at grand jury concerning this incident was hearsay related to him by the Clinton Township Police Department, and the grand jury testimony was not a statement affirmed by the officer. This portion of the grand jury transcript was not subject to disclosure under the Jencks Act. Further, defendant had access to Agent Campbell's report, page 2, where it is noted that defendant Acord "ran from the officers." This information was available to the defense for impeachment purposes.

(5) At page 5 of the grand jury transcript, Agent Campbell testified that Clinton Township advised "that two suspects had attempted to pass a counterfeit $50 federal reserve note at Kroger's." Defendants allege that this statement was inconsistent with the testimony of Mr. Holland, who stated that one person handed him the note. However, Agent Campbell did not testify concerning this matter at trial, and therefore this part of Agent Campbell's grand testimony was not subject to disclosure under the Jencks Act. Additionally, in light of all the evidence, the statement was not inconsistent. Mr. Holland testified that John Tincher handed him the note, then later met William Tincher in the parking lot. (Trial Tr. pp. 4–6). Therefore, William Tincher could reasonably be considered a second "suspect" in the passing of the counterfeit note at Kroger's.

(6) At page 13 of the grand jury transcript, Agent Campbell testified that William Tincher stated he mistakenly "threw away" a genuine one hundred dollar bill. At page 166 of the trial transcript and page 6 of the report, William Tincher is quoted as admitting to "shoving" a genuine one hundred dollar note in the seat of the cruiser. The court finds that these statements are not inconsistent. The court also notes that at page 6 of Agent Campbell's report, he goes on to state that William Tincher stated he "threw away" the genuine one hundred dollar note because he was nervous. Defendant had access to this report at trial and could have cross-examined Agent Campbell concerning this language.

(7) Defendant John Tincher argues that the information on page 11 of the grand jury testimony concerning the fact that no notes were obtained from the Village Thrift Store was exculpatory and should have been disclosed. This information was brought out in Agent Campbell's trial testimony (Tr. p. 149) and defense counsel's objection to that line of inquiry was sustained. Thus, the fact that no notes were

recovered from the Village Thrift Store was revealed to defendant at trial.

In accordance with the foregoing analysis, the court finds that grand jury testimony noted by defendants either was not inconsistent, was not Jencks Act material which could be used to impeach Agent Campbell, or did not constitute such a significant inconsistency as to conceivably be of any assistance to defendants for impeachment. In most instances, Agent Campbell's trial testimony was consistent with his report, which was prepared soon after the offense when his recollection was fresh, and which therefore was more likely to be reliable. In instances four and six above, defendants had access to the same information in Agent Campbell's report.

Defendants also note instances where Agent Campbell's trial testimony is more detailed than the grand jury testimony. It is apparent that the grand jury testimony, which spans a mere sixteen pages and which reflects fifteen minutes of proceedings, is less detailed than the trial testimony.

Ordinarily, the failure to mention a fact during a prior statement may constitute grounds for impeachment when that fact is of such importance that it should reasonably have been mentioned in the initial statement. However, as Government counsel testified, grand jury testimony is frequently shorter and less detailed than trial testimony. This is presumably because the Government must establish only probable cause in order to obtain an indictment, whereas the Government's burden of proof at trial is beyond a reasonable doubt. The role of an agent summarizing the Government's case before the grand jury differs from his role as a trial witness. The omission of details by a case agent summarizing the case before the grand jury does not have the same significance as, for example, the omission of a fact from an eyewitness statement given to the police. Thus, in the absence of some substantial omission, Agent Campbell's failure to mention minor details in this grand jury testimony is not significant for impeachment purposes. The court will now examine the omissions noted by defendants.

(8) The grand jury testimony does not include a reference to three genuine notes in the amounts of one, fifty, and one hundred dollars recovered from John Tincher. A careful reading of the transcript reveals that Agent Campbell never testified at trial concerning the recovery of these notes, since he was not present at the time, and such information would be hearsay as to him. When questioned about these notes, they were presented to him in the context of being previously identified by other witnesses. (Trial Tr. pp. 151, 185). Thus, his failure to mention this fact at grand jury does not impeach his trial testimony. This genuine currency was also not critical to the probable cause determination to be made by the grand jury. The genuine currency was mentioned at page 3 of the report.

(9) At trial, Agent Campbell testified that John Tincher stated he purchased four old pairs of pants at the Village Thrift Store. (Trial Tr. p. 148). Before the grand jury, Agent Campbell testified that John Tincher stated he passed a counterfeit note at the Village Thrift Store. (Grand Jury Tr. p. 10). Thus, his grand jury testimony is not inconsistent, but simply does not specify exactly what was purchased at the Village Thrift Store. This is not a significant omission. Agent Campbell's trial testimony is consistent with his report, page 4.

(10) At page 141 of the trial transcript, John Tincher is quoted as saying "words to the effect, This is crazy, I want to talk to you, I want to cooperate with you." There is no reference to this statement in the grand jury transcript. However, it was also not contained in the report, and defendant cross-examined the agent concerning this omission at page 189 of the trial transcript. No greater impeachment value would have been provided by the grand jury transcript.

(11) At trial, p. 150, Agent Campbell testified that John Tincher stated that he passed fifty dollar counterfeit notes at Wendy's in the vicinity of Circleville and Waverly. This statement is not related in Agent Campbell's grand jury testimony. However, this matter was of little relevancy to probable cause or to defendant's guilt, since it was brought out by the defendant on cross-examination, at page 198, that Agent Campbell did not go to these

locations to investigate those incidents, and no verification of defendant's admissions concerning these two counterfeit notes was presented by the Government. The trial testimony is consistent with page 4 of the report.

(12) At trial, p. 152, John Tincher was quoted as stating that McCoy gave him approximately $1,200 to $1,500 in counterfeit money. This amount was not specifically mentioned in the grand jury proceedings, but Agent Campbell testified, at page 16, that John Tincher stated McCoy would dole out money to them. The grand jury and trial testimony are not conflicting. The amounts given at trial correspond with Agent Campbell's report at page 5.

(13) At trial, p. 153, John Tincher was quoted as saying that McCoy trusted him and that's why he gave him so much counterfeit money. A similar statement is contained in page 5 of the report, but was not mentioned before the grand jury. However, there is no conflicting grand jury testimony on this issue.

(14) At page 153 of the trial transcript, Agent Campbell testified that he was told by John Tincher that McCoy had a laser xerox machine. The statement is reflected in the report, page 5. This statement was not repeated before the grand jury, although Agent Campbell did testify that the counterfeit notes were made with a color copying machine. The grand jury testimony does not conflict with the trial testimony.

(15) At trial, p. 154, John Tincher is quoted as saying that McCoy had approximately $65,000 to $70,000 in a sack in the truck. This statement is recorded at page 5 of the report. There is a reference at page 16 of the grand jury transcript to a sack of counterfeit currency, with no specific amount being mentioned. This omission is not significant. The grand jury transcript is not conflicting.

(16) The grand jury transcript contains no reference to threats allegedly made to the defendants by McCoy. Defendants' statements regarding these threats were contained in the report at pages 5 and 7 and were brought out in Agent Campbell's trial testimony. The information concerning these threats was not relevant to the

probable cause determination to be made by the grand jury, and the omission of this information was not significant.

The court finds that the above omissions would not have been of any significant impeachment value to defendants. As noted above, the omission of detail is attributable to the nature of the indictment process. This is supported by the fact that, with the exception of item number 10, the above matters omitted from the grand jury testimony were contained in the agent's report, which predated his grand jury testimony. In regard to instance number 10, defense counsel cross-examined the agent concerning the absence of that information from the report. Cross-examination with the grand jury transcript would not have proved more effective.

The court finds that the remainder of the grand jury testimony was consistent with Agent Campbell's trial testimony and with his report. Defendants at trial had access to Agent Campbell's report and interview notes, and therefore they had most of the information contained in the grand jury transcript. The court finds that the minor inconsistencies and omissions discussed above would have been of insignificant, if any, value to defendants for impeachment purposes. There are no substantial deviations between the agent's grand jury testimony and trial testimony. The court finds that the nondisclosed evidence could not have reasonably affected the jury's judgment, nor is there any significant chance that skillful use of the grand jury transcript at trial would have induced a reasonable doubt in the minds of the jurors. The Government's case was strong. It is perfectly clear that the failure to disclose the grand jury transcript did not result in prejudice to the defendants. The court further finds that there was no nondisclosed evidence which was material or favorable to the defense.

CONCLUSION

■ The court concludes that a Jencks Act violation occurred in this case. However, in light of the fact that the violation was the result of mistake or inadvertence on the part of the Government, and was not the result of bad faith or intentional and deliberate conduct, and in light of the fact that the nondisclosure resulted in no

prejudice to defendants and the error was clearly harmless, the court concludes that a new trial is not warranted in this case, and that defendants' convictions should be re-affirmed. According to the procedure outlined in *Goldberg*, 425 U.S. at 111, 96 S.Ct. at 1348, the clerk of courts shall enter a new final judgment of conviction.