14 F.3d 603
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
John L. TINCHER, William K. Tincher, and James E. Acord,
Defendants-Appellants.
 Nos. 92-3796 to 92-3798.
 United States Court of Appeals, Sixth Circuit.
 Dec. 21, 1993.
 
 Before: KEITH and SUHRHEINRICH, Circuit Judges; and, LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants appeal their convictions[1] for passing and altering counterfeit obligations of the United States, in violation of 18 U.S.C. Sec. 472, and for conspiracy to pass and utter counterfeit obligations of the United States, in violation of 18 U.S.C. Sec. 371. We REVERSE the conviction of defendant William Tincher and AFFIRM the convictions of John Tincher and James Acord.
 
 I.
 
 2
 On July 22, 1988, John Tincher purchased food and cigarettes with what appeared to be a $50 bill at a Kroger food store in Columbus, Ohio. The cashier almost immediately recognized the bill as a counterfeit. Its coloring was noticeably irregular, and it was thicker and firmer than a genuine bill. The cashier notified his manager and followed John Tincher into the store parking lot, where he observed John Tincher talking to William Tincher. After John spotted the clerk, the two parted ways, John running toward a Sister's Chicken and William entering a McDonald's restaurant.
 
 
 3
 The Kroger cashier gave descriptions of both John and William Tincher to Clinton Township police officers. Accompanied by one of these officers, the Kroger cashier identified John Tincher in the Sister's Chicken restaurant, where he was arrested. A search revealed that John Tincher possessed eighteen counterfeit bills: six $20, six $50, and six $100 bills. John Tincher claimed that he found the bills and did not know they were counterfeit. Officer Jackson located William Tincher in the McDonald's restaurant. Upon learning that John Tincher possessed suspicious bills, officer Jackson placed William Tincher under arrest.
 
 
 4
 Witnesses identified James Acord as a person seen in the presence of John and William Tincher. Acord also had attempted to pass a counterfeit note. As a result, he, too, was arrested. All three defendants were taken to the Clinton Township police department, where, within one hour of the arrests, Secret Service Agents Montgomery and Campbell began questioning them.
 
 
 5
 All three defendants were convicted of conspiracy to utter counterfeit notes. In addition, defendant James Acord was convicted of attempt to utter a counterfeit note; and defendant John Tincher was convicted of uttering, and possession with intent to use, a counterfeit note.
 
 
 6
 In the first appeal, defendants raised a number of issues, including lack of probable cause to arrest, improper Miranda warnings and absence of waiver, denial of separate trials, and improper sentencing. They also argued that the government improperly withheld exculpatory and discoverable material from the defendants. We held that the government violated the Jencks Act, 18 U.S.C. Sec. 3500, Federal Rules of Criminal Procedure 16 and 26.2, and Brady v. Maryland, 373 U.S. 83 (1963) when it failed to disclose the grand jury testimony of Secret Service Agent Campbell. We therefore vacated the convictions and remanded the case with instructions to review and consider the grand jury testimony. We found no need at that time to address the remainder of the claims on appeal.[2]
 
 
 7
 On remand, the district court held that although the government had inadvertently and mistakenly withheld Agent Campbell's grand jury testimony, the error was harmless. As a result, the district court entered a new final judgment of conviction and sentence.[3]
 
 
 8
 In the second appeal, defendants challenged the district court's ruling regarding Agent Campbell's testimony, and again raised the issues upon which we declined to rule in the first appeal. We held that our prior mandate clearly characterized the government's conduct as intentional, and that therefore the district court impermissibly determined that the government's conduct was inadvertent and the result of mistake. We further held that the district court's harmless error analysis was inappropriate. We instructed the district court to strike Agent Campbell's testimony and to determine whether there remained in the record sufficient evidence to support defendants' convictions. As with the first appeal, given the procedural posture of the case, we found no need to address the remaining claims raised on appeal.
 
 
 9
 On second remand, the district court found that there was sufficient direct and circumstantial evidence to support defendants' convictions.
 
 II.
 A.
 
 10
 Defendants claim that the district court erred in reviewing the sufficiency of the evidence. First, they argue that the district court erred by using a state law standard for reviewing the evidence. Second, defendants argue that the district court improperly relied on the stricken testimony of Agent Campbell when it noted that genuine and counterfeit bills found on the defendants displayed numerically similar serial numbers, and tended circumstantially to prove guilt. The district court noted that the bills themselves were admitted into evidence and could therefore be compared. Defendants, however, argue that only Agent Campbell provided testimony as to the significance of similar serial numbers, and that absent his testimony the numerically similar numbers lacked any probative value. Last, defendants claim that in the absence of Agent Campbell's testimony, there is simply insufficient evidence of guilt beyond a reasonable doubt.
 
 
 11
 This court uses the same standard as the district court in reviewing a sufficiency of the evidence claim: whether any reasonable jury, viewing the evidence in a light most favorable to the government and drawing all reasonable inferences therefrom in favor of the government, could find all of the elements of the crimes charged beyond a reasonable doubt. United States v. Overmyer, 867 F.2d 937 (6th Cir.), cert. denied, 493 U.S. 813 (1989); United States v. Strong, 702 F.2d 97, 99 (6th Cir.1983) (citing Jackson v. Virginia, 443 U.S. 307, 318 (1979); United States v. Meyers, 646 F.2d 1142, 1143 (6th Cir.1981) (also citing Jackson v. Virginia ).
 
 
 12
 In identifying and defining its standard for reviewing the evidence on remand, the district court cited only Jackson, which involved a state court conviction. Defendants argue that the district court therefore improperly relied on state law to review the sufficiency of the evidence in this federal case. Sufficiency of the evidence claims in this circuit are properly reviewed under the Jackson standard. See Meyers, 646 F.2d at 1143. This claim thus lacks merit.
 
 
 13
 Defendants maintain that, under any standard, there was insufficient evidence to support their convictions. Courts have recognized that the elements of a counterfeiting offense may be inferred from a variety of circumstantial evidence. See United States v. Tucker, 820 F.2d 234, 236 (7th Cir.1987) (use of large counterfeit bills to make small purchases; rapid series of passings; segregation of genuine and counterfeit notes); United States v. Haggins, 545 F.2d 1009, 1013 (5th Cir.1977); United States v. Bishop, 534 F.2d 214, 218 (10th Cir.1976) (rapid series of passings); United States v. Releford, 352 F.2d 36 (6th Cir.1965), cert. denied, 382 U.S. 984 (1966) (use of poor quality paper, color, and printing).
 
 
 14
 John Tincher was convicted of uttering and possessing counterfeit notes. He was identified by the Kroger cashier as the individual who attempted to pass what was obviously a counterfeit $50 bill. The cashier also identified the actual counterfeit $50 bill, which, he testified, was much lighter in color than a genuine bill. Clinton Township police officers also testified that they removed from John Tincher's pockets eighteen counterfeit bills, which Tincher had kept separate from his genuine bills. The district court indicated that its own examination of the counterfeit bills convinced it that the bills were obviously counterfeit. The evidence overwhelmingly supports a finding of guilt.
 
 
 15
 James Acord was convicted for attempted uttering. A clerk from a bowling alley testified that Acord attempted to make a very small purchase (soda pop) with a large bill ($50). The bill was, like that used by John Tincher, discolored and thick. The clerk testified that the bill appeared "funny," and she refused to accept it after her manager inspected it. Further, Acord, like John Tincher, possessed both genuine and counterfeit bills, with similar serial numbers. The totality of the evidence could have led a reasonable jury to find beyond a reasonable doubt all of the elements of the crime charged.
 
 
 16
 All the defendants were convicted of conspiracy to utter counterfeit notes. With respect to John Tincher and James Acord, there was sufficient evidence of a conspiracy to support their convictions. Both defendants carried genuine bills with serial numbers very close to those of seized counterfeit bills, and both defendants were picked up by the police in the same geographical area. The evidence considered in a light most favorable to the government permits an inference of knowledge and agreement. John Tincher's passing of a counterfeit $50 bill and James Acord's attempt to pass a counterfeit $50 bill constitute overt acts done in furtherance of the conspiracy. After reviewing the evidence, we agree with the district court that there was sufficient evidence to support an inference of guilt beyond a reasonable doubt.
 
 
 17
 With respect to defendant William Tincher, however, we conclude that there was insufficient evidence to support his conspiracy conviction. The Kroger cashier identified William Tincher as the man who met John Tincher outside the Kroger store after John Tincher passed a counterfeit bill. Police later located William Tincher and placed him in the back seat of a police car. He was later arrested. Although no counterfeit bills were found on defendant William Tincher, he admitted to concealing a genuine $50 bill in the back seat of the police car. The bill's serial number closely approximated a serial number found on a counterfeit bill. Although William Tincher's activities were suspicious, the only evidence of guilt was his association with John Tincher in the Kroger parking lot. As we stated in United States v. Pena, 983 F.2d 71 (6th Cir.1993), association with conspirators, alone, will not support a conspiracy conviction.
 
 
 18
 The government argues that William Tincher's attempt to hide a genuine $50 bill in the rear seat of a police car evidences his knowledge of and participation in the conspiracy. The government contends that counterfeiters typically use the serial numbers from legitimate notes, and that because the serial number on William Tincher's genuine bill was numerically close to that of a seized counterfeit bill, there is a strong inference of guilt. We disagree.
 
 
 19
 Although the counterfeit and genuine bills displayed similar serial numbers and were both admitted into evidence, we conclude that a reasonable jury could not have inferred guilt in the absence of testimony establishing the customary practices of counterfeiters. Admittedly, Agent Campbell testified that counterfeiters commonly use serial numbers from genuine bills and customarily sequester the counterfeit and genuine bills; however, his testimony was excluded and could not be considered on remand. Absent Agent Campbell's testimony, there was no reasonable factual basis upon which the jury could have inferred guilt from defendant William Tincher's conduct. Despite the government's protestations to the contrary, a reasonable juror employing common sense could not have made the logical leap necessary to support the guilty conviction. Defendant William Tincher's conviction is therefore reversed.
 
 B.
 
 20
 Defendant John Tincher claims that because there was no probable cause to arrest him, all evidence seized subsequent to his arrest should have been suppressed as fruit of the poisonous tree. We review a finding of probable cause under a de novo standard. United States v. Ogbuh, 982 F.2d 1000, 1002 (6th Cir.1993). Probable cause exists if there is a "probability or substantial chance of criminal activity, [but] not [necessarily] an actual showing of such activity." Id.
 
 
 21
 The information leading to defendant John Tincher's arrest was provided by an experienced cashier who quickly identified the counterfeit nature of the $50 bill passed by John Tincher. The cashier also provided valuable assistance to the police in identifying John Tincher. The cashier's experience, knowledge, and assistance strongly evidence the trustworthiness and accuracy of the information provided to the arresting officer. Accordingly, we conclude that there was a strong probability of criminal activity involving John Tincher. His claim therefore fails.
 
 C.
 
 22
 On cross-examination, defendant John Tincher was asked, and he answered, questions regarding his prior felony drug conviction. Defense counsel objected to questions about whether defendant pled guilty or was found guilty, whether he served time in prison, and whether he wanted to avoid returning to prison. Defendant argues that cross-examination exceeded the scope of impeachment by evidence of conviction as permitted under Fed.R.Evid. 609(a).
 
 
 23
 A trial court's decision to admit evidence of a prior conviction for impeachment purposes under 609(a) will be upset only upon a showing of abuse of discretion. United States v. Morrow, 977 F.2d 222, 228 (6th Cir.1991) (en banc), cert. denied, 113 S.Ct. 2969 (6th Cir.1993). In this case, the trial court permitted only limited cross-examination on the prior conviction and admonished the jury to consider the prior conviction only for impeachment purposes. This admonishment provided sufficient protection from any possible prejudice. Accordingly, we find no abuse of discretion.[4]
 
 III.
 
 24
 For the reasons stated, we REVERSE defendant William Tincher's conviction and AFFIRM the convictions of defendants John Tincher and James Acord.
 
 
 
 [1]
 We note that the sentences imposed on John Tincher and James Acord have been completed. With regard to the sentencing issues raised by defendants in their earlier appeals, there appears to be a split of authority as to whether the completion of those sentences deprives this court of jurisdiction. Compare United States v. Farmer, 923 F.2d 1557 (11th Cir.1991) (sentencing issues are moot) with United States v. Montenegro-Rojo, 908 F.2d 425 (9th Cir.1990) (sentencing issues are not moot because of potential collateral consequences). John Tincher and James Acord have requested, however, that they be allowed to abandon their sentencing arguments and, accordingly, we will not consider them
 
 
 [2]
 See United States v. Tincher, 907 F.2d 600 (6th Cir.1990)
 
 
 [3]
 See United States v. Tincher, 749 F.Supp. 1494 (S.D.Ohio 1990)
 
 
 [4]
 Defendants argued in their initial appeal that the district court erred by admitting, through the testimony of Agent Campbell, their post-arrest incriminating statements and erred by admitting evidence of their confessions in violation of Bruton v. United States, 391 U.S. 123 (1986). Because the disputed evidence came in through the testimony of Agent Campbell, which was excluded upon remand, these claims are now moot